FILED

2008 Jan-11  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ORA JEAN HOWE,                        }
                                      }
        Plaintiff,                    }
                                      }       CIVIL ACTION NO.
v.                                    }       06-AR-1438-S
                                      }
ALLSTATE INSURANCE COMPANY,           }
                                      }
        Defendant.                    }


**MEMORANDUM OPINION**

Plaintiff, Ora Jean Howe ("Howe"), invokes this court's diversity jurisdiction, claiming that defendant, Allstate Insurance Company ("Allstate"), refused to pay her for the insured losses she sustained in a fire that destroyed her home.  Allstate has moved for summary judgment on all ten counts of Howe's complaint.  In her responsive brief, Howe concedes all claims except her claims for breach of contract, bad faith failure to pay, and bad faith failure to investigate.  Thus, the court will only address Allstate's motion for summary judgment on these three remaining claims.  For the reasons that follow, Allstate's motion will be denied as to the breach of contract claim but will be granted as to both other claims.

**FACTS**[1]

Prior to March 28, 2005, Howe lived in a house located at 2537 23rd Street in Birmingham, Alabama.  Allstate insured Howe's home

---

1       In accordance with Fed. R. Civ. P. 56(c), the narrative statement of facts include facts that are undisputed by the parties, and where there is a dispute, the facts are presented in the light most favorable to Howe, the non-moving party.

under a Deluxe Homeowners Policy that had been issued on July 22, 2004. Beginning in 1994, Howe lived in the house that she rented from the City of Birmingham until she acquired ownership and mortgaged the house to Ameriquest Mortgage Company ("Ameriquest") on August 11, 2004 to receive a loan. At that time, Howe's mortgage payment was $580 per month.

In November 2004, Howe lost her job and was left with a $555 per month child support payment and a $200 per month alimony as her only consistent sources of income. On October 25, 2004 and December 2, 2004, Ameriquest sent Howe letters informing her that she was in arrears. On February 17, 2005, an attorney for the succeeding mortgage holder sent her a letter informing her that the entire amount of her mortgage debt was due and that if it was not taken care of, a foreclosure sale of her house would take place on March 29, 2005. Howe was having other financial problems, including an inability to keep up with her bills for rental furniture and appliances and for her utilities.

On March 28, 2005, at approximately 1:30 a.m., Howe received a telephone call from the mother of her grandchildren, who was apparently involved in an altercation with Howe's son, Randy Morton ("Morton"), the father of Howe's grandchildren. Howe and her other son Elijah, who lived with her, left her home and arrived at Morton's abode at approximately 2:00 a.m. to deal with the altercation. Although the parties dispute whether Howe locked all

the doors to her house, the back door was in disrepair, with broken windows and a broken lock that allowed entry even when the door was locked.  At approximately 4:00 a.m. on March 28, 2005, Howe was made aware that her house was on fire.  She immediately returned to her home and found that firefighters had put the fire out but that the house was destroyed.  The next day, Howe contacted Allstate, who sent an adjuster to her house and provided her $4000 for immediate living expenses.  On May 15, 2005, Howe filed a "sworn statement and proof of loss," claiming $123,901.39 in damages under her policy.

In its investigation of Howe's claim, Allstate employed Wes Pullen ("Pullen") to undertake a "cause and origin" investigation of the fire.  After his inspection on April 5, 2005, he completed his report on April 29, 2005, concluding that the fire was incendiary in nature and that it had originated in the kitchen. Although Pullen asserts that the burn patterns in the kitchen indicate that some sort of flammable liquid started the fire, testing on samples from the kitchen did not reveal the presence of an ignitable liquid.  Pullen did find that gasoline was present in other rooms of the house but that it did not ignite.

In addition to this investigation, Allstate questioned Howe multiple times and also asked questions of her neighbors and family members.  Allstate records indicate that one of its employees took a recorded statement from Howe on March 31, 2005 in which Howe

3

admitted that she was behind on her mortgage payments, possibly missing as many as four of the last six monthly payments. On April 12, 2005, another Allstate employee met with Howe at the house. During this meeting, Howe indicated that she believed that she was two months in arrears on her mortgage and that the mortgage company was attempting to foreclose on her property. Howe also indicated that she was in arrears on her utility bills. In cooperation with Allstate's investigation and as required by the contract of insurance, Howe submitted to an examination under oath on June 14, 2005, at which, *inter alia*, Howe again admitted that she had stopped making mortgage payments due to her unemployment.

Allstate later employed an attorney, Sue Williamson ("Williamson"), to evaluate Howe's claim. In a coverage analysis letter dated July 28, 2005, Williamson recommended to Allstate that it deny because of "suspicious" circumstances surrounding the fire and possible misrepresentations regarding Howe's involvement and regarding the extent of her loss. Additionally, Williamson cited Howe's financial condition as a possible motive for her procurement of the fire. Allstate sent a letter to Howe on August 22, 2005 denying her claim, citing her motive and opportunity for starting the fire and her material misrepresentations made during the course of Allstate's investigation. In a later letter to Howe's attorney in response to his request for a more specific recitation of the material misrepresentations cited by Allstate in the denial letter,

Allstate stated that, among other possibilities, Howe misrepresented her true financial condition to investigators, her involvement in the cause of the fire, and her knowledge of the foreclosure sale of her house which was to take place the day after the fire occurred.

**ANALYSIS**

### *Howe's Breach of Contract Claim*

Howe first brings a straight-forward claim for breach of contract. Allstate's motion for summary judgment argues that the contract is void due to misrepresentations made by Howe, abrogating Allstate's obligations under the policy. The parties agree that Alabama law is applicable. Under Alabama law, "[a] party to a contract can establish a claim for breach of contract by showing '(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.'" *Allstate Ins. Co. v. Jackson*, No. 06-0554, 2007 WL 3287369, at *7 (S.D. Ala. Nov. 5, 2007) (quoting *State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999)). Neither here disputes the existence of the contract. Neither does either dispute Howe's performance in the form of premium payment, or Allstate's refusal to pay. However, Allstate says that it is not liable for its non-performance "if there is no coverage under the policy for the loss at issue." *Id.* (citing *Mueller v. Hartford Ins. Co. of Ala.*, 475 So.2d 554 (Ala.

1985)).  Coverage disappears if the policy is necessarily voided.
*Id.*

The Alabama legislature has specifically addressed how an insured's misrepresentations in a proof of loss may void an insurer's obligation to perform:

> No misrepresentation in any proof of loss under any insurance policy shall defeat or void the policy unless such misrepresentation is *made with an actual intent to deceive* as to a *matter material* to the insured's rights under the policy.

Ala. Code § 27-14-28 (1975)(emphasis added).  Thus, it is clear that, to have this insurance contract declared void and for Allstate to win on the breach of contract claim, Allstate must demonstrate (1) that Howe made misrepresentations regarding her proof of loss under the policy, (2) that any such misrepresentation was material, and (3) that Howe intended to deceive Allstate in making the misrepresentation.[2]

In her response to Allstate's motion, Howe argues that Alabama law also requires that the Allstate must have relied on the misrepresentation in making its coverage decision to have the misrepresentation void the contract.  However, a reliance element is not required when the misrepresentation concerns a proof of loss

---

    2    Although Allstate's policy contains a provision similar to this statute that voids the policy if the insured makes a misrepresentation but does not require any deceptive intent, deceptive intent on the part of Howe is necessary for any of the alleged misrepresentations to void the contract.  *See Ex parte State Farm Fire & Cas. Co.*, 523 So.2d 119, 120 (Ala. 1988)("[s]tatutory provisions respecting insurance are to be read into all insurance contracts subject to Alabama law, and, therefore, § 27-14-28 must be read into the... policy in question").

under the policy rather than during the policy's formation. *See Amer. Fire & Cas. Co. v. Archie*, 409 So.2d 854, 856 (Ala. Civ. App. 1981) ("There is a difference in the required elements of misrepresentation before loss and misrepresentation after loss. Before loss, a misrepresentation must be material to an increase in the risk of loss and must be relied on by the insurer to its prejudice... After loss, a misrepresentation need only be made with the actual intent to deceive and be related to a matter which is material."). Thus, to obtain summary judgment on the breach of contract claim, Allstate must show that the undisputed facts fulfill the requirements to demonstrate that the contract is void. *See* Fed. R. Civ. P. 56(c).

Allstate must show that Howe made misrepresentations during the investigation. In its motion, Allstate contends that Howe misrepresented her involvement in the fire and the state of her indebtedness relating to her mortgage and her rental furniture. The evidence relating to whether Howe was involved in procuring the fire is heavily disputed and cannot conclusively support the contention that Howe misrepresented her involvement. Therefore, no misrepresentation regarding Howe's involvement in the fire can form a basis for voiding the contract.

Allstate does, however, have indisputable evidence to show that Howe made misrepresentations about her mortgage. The evidence shows that at her examination under oath, Howe stated that she made

mortgage payments in December of 2004 and in January and February of 2005. In contrast, at her deposition Howe was unable to recall if or how many mortgage payments she made after losing her job in November of 2004. She also stated that she may have been writing checks for her mortgage payments which were returned because her account had insufficient funds. Allstate also has internal records showing that Howe told an Allstate employee in March 2005 that she had missed as many as four out of her last six mortgage payments and that in April 2005, she told a different employee that she was only in arrears for two months of mortgage payments. The mortgage company reports that Howe's last mortgage payment was made in December 2004. The evidence also clearly shows that Howe's house was to be foreclosed upon on March 29, 2005, the day after the fire. While none of Howe's statements are conclusively false (viewing them in the light most favorable to her, she could have meant that she made mortgage payments in January and February 2005 but with a check drawing from insufficient funds), they did misrepresent the status of her mortgage to Allstate employees. Thus, Howe's alleged statements regarding her mortgage in her examination under oath and to the Allstate employees can be termed misrepresentations.

In addition to statements relating to her mortgage, Allstate also claims that Howe made misrepresentations regarding her indebtedness on the rental furniture she had in her house. At her

examination under oath, Howe stated that she had rented a washer and dryer from one store and furniture from another store.  She stated that both of these accounts had been written off after the fire and that prior to the write off, she had owed money on the furniture.  At her deposition, Howe stated that she had received calls requesting that she make payments on her furniture but again stated that both that account and the account for her rental washer and dryer had been written off.  Because Allstate has not demonstrated that any of these statements were false, it cannot rely on them as a grounds for voiding the policy.

Allstate must show not only that Howe made misrepresentations regarding the state of her finances and mortgage in its investigation of her proof of loss, but in order to have the contract declared void, Allstate must also show that the said misrepresentations were material and that Howe **intended** to deceive Allstate in making these misrepresentations.  This court and the Eleventh Circuit have previously held that, with regard to misrepresentations made in the *formation* of an insurance policy that have the potential to void the contract, "[i]n Alabama, the materiality of a misrepresentation is generally a jury question." *Bennett v. Mut. of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992) (affirming this court's opinion finding that an insured had made a misrepresentation, but that the materiality of the misrepresentation was a jury question); *see also* 1 Allan D. Windt,

*Insurance Claims and Disputes* § 3.6 (4th ed. 2007) (stating that "a statement is material if it is reasonably relevant to the insurer's investigation of a claim" but that "materiality is usually a jury issue").

Although this rule is primarily used in the context of the *formation* of an insurance policy rather than in proving a loss, it is instructive here.  An insured's financial status is important to an insurer when evaluating questions of the insured's involvement in possibly procuring a fire.  However, it is questionable whether Howe's inaccurate statements regarding the state of her mortgage were material in Allstate's evaluation of her proof of los, because Allstate was aware of Howe's financial problems from the beginning of its investigation.  Whether Howe's misstatements regarding the exact status of her mortgage were material to Allstate when Howe had consistently acknowledged that she had financial problems is a question of fact that remains at issue.  *See Jackson*, 2007 WL 3287369, at *8.

In addition to proving materiality, Allstate must prove that Howe had a deceptive intent when making the inaccurate statements relating to her mortgage.  Allstate argues that Howe's multiple misstatements regarding the status of her mortgage payments in and of themselves demonstrate an intent to deceive.  However, the court cannot confidently say that Howe, who admitted to Allstate on numerous occasions beginning at the latest on March 31, 2005 that

10

she was in arrears on her mortgage, intended to deceive Allstate when she made misstatements in response to Allstate's repeated questioning.  If Howe is asked (she has not been asked) about her intent when she made statements about her financial status, she probably will deny any intent to deceive.  has never been questioned about her motivations or state of mind when she made misstatements about her financial status.  Therefore, Howe's intent at the time she made the relevant statements is a question of fact that the court cannot resolve on summary judgment.  *See id.*

Because there is a genuine issue of material fact regarding the materiality of and the intent behind Howe's misrepresentations, Allstate has not shown that the contract is void as a matter of law, so as to relieve it from liability for its non-performance. Therefore, Allstate's motion for summary judgment on Howe's breach of contract claim is due to be denied.

### *Howe's Bad Faith Failure to Pay Claim*

Allstate has also moved for summary judgment on Howe's bad faith failure to pay claim.  In this type of bad faith claim, "[a]n insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact.  No lawful basis means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." *Davis v. Cotton States Mut. Ins. Co.*, 604 So.2d 354, 358 (Ala. 1992)(internal citations and punctuation omitted).  In *National*

*Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982), the Alabama Supreme Court laid out what is required of a plaintiff to prove bad faith failure to pay.  That court bindingly held that the plaintiff must show:

> (a) an insurance contract between the parties and a breach thereof by the defendant;
>
> (b) an intentional refusal to pay the insured's claim;
>
> (c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
>
> In short, plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*Id.* (emphasis in original).

It has been established that Howe made some misrepresentations or misstatements regarding her financial status during Allstate's investigation of her claim (although the materiality of these misrepresentations and Howe's intent in making them is still in dispute).  It is undisputed that Howe's home was to be foreclosed upon the day following the fire.  Additionally, it is undisputed that Howe was in financial distress and had been for several months preceding the fire due to her unemployment.  It is also undisputed

that Howe's home was empty in the middle of the night when the fire began, and that Howe left the residence about an hour before the fire started.  Furthermore, it is undisputed that a fire cause and origin expert concluded that the fire was incendiary in nature and that a flammable liquid was found poured on the floor in more than one room inside the house.  The expert also stated that the burn patterns in the kitchen, where the fire began, indicated that a flammable liquid started the fire, although testing in the kitchen did not conclusively prove that a liquid of that sort was present.

These undisputed facts forming a basis for Allstate's denial of Howe's claim are certainly debatable reasons for refusing to pay. *Bowen* defines a debatable reason for the denial of a claim as a reason that is "arguable... one that is open to dispute or question." *Bowen*, 417 So.2d at 183.  Here, it is certainly a matter of legitimate dispute as to whether Howe had a role in the fire.  She made some misrepresentations regarding her financial state at the time of the fire and certainly had a motive to set the fire.  Under this policy, Allstate does not cover any loss caused by the insured or in which the insured misrepresents any material fact.  Although the materiality of Howe's misrepresentations is disputed, the possibility of a legitimate denial of coverage based on Howe's misrepresentations constitutes an "arguable" reason for denying Howe's claim. *See State Farm Fire & Cas. Co. v. Balmer*, 672 F.Supp. 1395, 1402 (M.D. Ala. 1987) ("if any one of the reasons

for denial of coverage is at least 'arguable,' the tort claim for bad faith must fail and should not be submitted to the jury").

The undisputed facts mentioned above serve as sufficient bases for Allstate's denial of Howe's claim.   Allstate's denial is further bolstered by its procurement of legal counsel in its claims investigation.   Although Howe disputes the outside counsel's motivation, the fact that outside counsel was employed implicates Alabama caselaw establishing that "reliance on the advice of informed counsel has often been sufficient in itself to establish good faith or to rebut a claim of bad faith." *Davis*, 604 So.2d at 359.   Thus, Allstate's debatable reasons for denying Howe's claim, coupled with its reliance on the advice of outside counsel, requires the court to grant Allstate's motion for summary judgment on the bad faith failure to pay claim.

### *Howe's Bad Faith Failure to Investigate Claim*

Alabama courts generally term bad faith failure to investigate claims as "abnormal" bad faith claims, meaning that the plaintiff need not prove that he is entitled to a directed verdict on the related breach of contract claim in order to demonstrate that the defendant is liable under the bad faith claim.   *Employees' Benefit Ass'n v. Grissett*, 732 So.2d 968, 976 (Ala. 1998).   To present a viable bad faith failure to investigate claim, a plaintiff must show that the insurer "recklessly or intentionally failed to properly investigate a claim or to subject the results of its

14

investigation to a cognitive evaluation." *Id.* Here, Howe claims that Allstate purposefully did not investigate her claim and did not submit the claim to a sufficient evaluation. In its motion for summary judgment, Allstate contends that there is no genuine issue as to any material fact to demonstrate that Allstate did not fully and fairly investigate and evaluate Howe's claim.

It is clear from the undisputed facts that Allstate did thoroughly investigate Howe's claim and spent considerable energy to do it. Allstate employed a cause and origin investigator to examine the house and to attempt to determine the cause of the fire. Howe's own evidence details Allstate's investigation, which demonstrates that Allstate employees personally interviewed Howe on numerous occasions, visited and inspected the home, canvassed the neighborhood and interviewed neighbors on multiple occasions, met with city fire officials, and researched Howe's financial status. This undisputed evidence evinces as thorough an investigation of Howe's claim as is possible. It would be speculative to conclude, as a matter of law, that Allstate was merely conducting a charade. There is no evidence upon which a reasonable jury would conclude that Allstate's investigation was a sham, a delusion, and a fraud.

Allstate had at least three different employees working on this case. It also employed the services of an independent cause and origin investigator, who concluded that the fire was incendiary in nature and determined the presence of flammable liquid in the

home.  In addition, Allstate submitted its files and information to an outside attorney to summarize and analyze it and to give Allstate a recommendation regarding its duty to honor the policy. Howe contends that an email exchanged between an Allstate employee and the outside attorney, in which the employee asked the attorney if she had enough evidence to complete the denial to which the attorney responded "I think so," demonstrates that Allstate's denial of Howe's claim was a foregone conclusion.  However, in the email, the attorney also stated that she wanted to look at more evidence before she reached a conclusion on the coverage question. The belief of one Allstate employee that a denial of Howe's claim was imminent three months into Allstate's investigation is not enough to cerate a jury question about whether Allstate submitted Howe's claim to a cognitive evaluation.  Allstate took sufficient steps to ensure that Howe's claim was fully and fairly investigated and evaluated, employing and interviewing experts and witnesses outside of itself.  Its conclusion may have been wrong, but it was not the product of a failure to investigate.  This court recognizes that casualty insurance companies are on the horns of a dilemma. If they don't investigate enough, they are guilty of not investigating.  If they investigate too much, they are guilty of not investigating fairly and sincerely.

Because there is no genuine issue as to any material fact as to whether Allstate fully and fairly investigated Howe's claim, its

16

motion for summary judgment on the bad faith failure to investigate claim is due to be granted.

**CONCLUSION**

Based on the foregoing, Allstate's motion for summary judgment will be granted in part and denied in part by separate order.

**DONE** this 11th day of January, 2008.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE